# EXHIBIT B



July 13, 2018


**SENT VIA EMAIL**


Dear Buprenorphine and Naloxone Sublingual Film applicant:

On June 14, 2018, the Food and Drug Administration ("FDA" or "the Agency") approved abbreviated new drug applications ("ANDAs") for multiple strengths of Buprenorphine and Naloxone Sublingual Film referencing Suboxone (buprenorphine and naloxone) sublingual film, for sublingual or buccal use, new drug application (NDA) 022410, as the Reference Listed Drug ("RLD").  This letter describes certain determinations FDA made with respect to 180-day exclusivity for certain strengths of this drug.  Several applicants expressed confusion about the basis for FDA's decision in this case, and FDA is providing this letter to applicants to clarify FDA's thinking regarding several issues involving 180-day exclusivity for this drug.

Section I of this letter addresses FDA's determinations regarding (1) which applicant or applicants were considered to meet the definition of "First Applicant" under section 505(j)(5)(B)(iv)(II)(bb) of the Federal Food, Drug, and Cosmetic Act ("FD&C Act") for the 4 mg/1 mg and 12 mg/3 mg strengths of Buprenorphine and Naloxone Sublingual Film and (2) why this applicant or these applicants forfeited exclusivity for those strengths.  Section II describes FDA's determination that the one or more first applicants for the 8 mg/2 mg strength of Buprenorphine and Naloxone Sublingual Film forfeited exclusivity under the failure-to-market provision in section 505(j)(5)(D)(i)(I) of the FD&C Act.[1]

I.    **"First Applicant" for ANDAs Referencing the 4 mg/1 mg and 12 mg/3 mg Strengths of Suboxone**

   A.  **Statutory and Regulatory Background**

      1.  **NDAs and Patent Submission Requirements**

The process for obtaining approval to market an innovator drug approved under the FD&C Act in an NDA differs from that for obtaining approval to market a generic drug under an ANDA.  A sponsor of an innovator drug must submit an NDA, which must contain, among other things, a demonstration of the safety and effectiveness of the drug for the conditions of use for which approval is sought.[2]  In its application, an NDA applicant must submit information for each patent that claims the drug or method of using the drug and for which a claim of patent infringement could reasonably be asserted against a person engaged in the unlicensed manufacture, use, or sale of the drug product.[3]  Upon approval of an NDA, FDA publishes this

---

[1] The issues described in this letter do not pertain to the 2 mg/0.5 mg strength of Buprenorphine and Naloxone Sublingual Film.  *See* infra note 29.
[2] Section 505(b)(1) of the FD&C Act.
[3] Id.  See also section 505(c)(2) of the FD&C Act.

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD  20993
www.fda.gov

patent information in its publication *Approved Drug Products with Therapeutic Equivalence Evaluations,* known as *the Orange Book.*[4]

## 2. ANDA Approval Pathway

The Drug Price Competition and Patent Term Restoration Act of 1984 (the Hatch-Waxman Amendments)[5] amended the FD&C Act to add section 505(j), which established the ANDA approval pathway for generic drugs. The Hatch-Waxman Amendments reflect Congress's efforts to balance the need to "make available more low cost generic drugs by establishing a generic drug approval procedure" with new incentives for drug development in the form of exclusivity and patent term extensions.[6]

To obtain approval of a generic drug, an ANDA applicant is not required to provide independent evidence of the safety and effectiveness of the proposed generic drug. Instead, the applicant relies on FDA's previous finding that the RLD[7] relied upon by the ANDA applicant is safe and effective. The ANDA applicant must demonstrate that the proposed generic drug has the same active ingredient(s), route of administration, dosage form, and strength as the RLD.[8] A generic drug also must have the same conditions of use and the same labeling as the RLD (except for certain permissible labeling differences),[9] and the applicant must demonstrate that its proposed generic drug is bioequivalent to the RLD.[10]

## 3. ANDA Patent Certification and Notice Requirements

The timing of ANDA approval depends on, among other things, patent and exclusivity protections for the RLD. An applicant must provide in its ANDA information related to any patents listed in the Orange Book for the RLD. In particular, the ANDA applicant generally must submit to FDA one of four specified certifications under section 505(j)(2)(A)(vii) of the FD&C Act regarding the patents listed in the Orange Book for the RLD.

If the Orange Book does not list a patent for the RLD, the ANDA applicant must certify:

- That such patent information has not been submitted by the NDA holder for listing in the Orange Book (a paragraph I certification).[11]

With respect to each patent listed in the Orange Book for the RLD, the applicant's patent certification must state one of the following:

---

[4] The Orange Book is available at http://www.accessdata.fda.gov/scripts/cder/ob/default.cfm.
[5] Public Law 98-417 (1984).
[6] See House Report No. 98-857, part 1, at 14-15 (1984), reprinted in 1984 U.S.C.C.A.N. 2647 at 2647-2648; see also *Abbott Labs. v. Young,* 920 F.2d 984, 985 (D.C. Cir. 1990).
[7] An RLD is "the listed [i.e., approved] drug identified by FDA as the drug product upon which an applicant relies in seeking approval of its ANDA" (21 CFR 314.3). RLDs are identified in the Orange Book. See Section 505(j)(2)(A) & (j)(4) of the FD&C Act and 21 CFR 314.94(a).
[8] See section 505(j)(2)(A)(ii)-(iii) of the FD&C Act. Certain differences between a RLD and a proposed generic drug product may be permitted in an ANDA if these differences are the subject of an approved suitability petition submitted under section 505(j)(2)(C) of the FD&C Act and pursuant to 21 CFR 314.93.
[9] See section 505(j)(2)(A)(i), (v) of the FD&C Act.
[10] See section 505(j)(2)(A)(iv) of the FD&C Act.
[11] 21 CFR 314.94(a)(12)(i)(A). If in the opinion of the ANDA applicant and to the best of its knowledge there are no patents claiming the drug product, drug substance, or method of use of the drug product, the applicant must submit to its ANDA a certification stating that opinion. 21 CFR 314.94(a)(12)(ii).

- That such patent has expired (a paragraph II certification)
- The date on which such patent will expire (a paragraph III certification)
- That such patent is invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted (a paragraph IV certification).[12]

If an applicant submits a paragraph I or II certification, the patent in question will not delay ANDA approval.  If an applicant submits a paragraph III certification, the applicant agrees to wait until the relevant patent has expired before seeking final approval of its ANDA.  If, however, an applicant wishes to seek approval of its ANDA before a listed patent has expired by challenging the validity of a patent, claiming that a patent would not be infringed by the product proposed in the ANDA, or claiming a patent is unenforceable, the applicant must submit a paragraph IV certification to FDA.

Once an application containing a paragraph IV certification to a listed patent receives an acknowledgment letter that FDA has determined the application is sufficiently complete to permit substantive review, the applicant must provide the NDA holder and the patent owner notice of its patent certification, including a description of the legal and factual bases for the ANDA holder's assertion that the patent is invalid or not infringed.[13]  For original applications, the statute directs that notice shall be provided not later than 20 days after FDA informs the applicant that the application has been received for review.[14]  For amendments and supplements to an application, the statute states that notice shall be provided "at the time at which the applicant submits the amendment or supplement, regardless of whether the applicant has already given notice with respect to another certification contained in the application or in an amendment or supplement to the application."[15]

If a patent is listed at the time an ANDA is submitted and, in response to notice of a paragraph IV certification, the NDA holder or patent owner initiates a patent infringement action against the ANDA applicant within 45 days of receiving the required notice, approval of the ANDA generally will be stayed for 30 months from the later of the date of receipt of the notice by any owner of the patent or the NDA holder or such shorter or longer time as the court might order.[16]  The purpose of the stay is to "allow time for patent infringement claims to be litigated prior to approval of the potentially infringing product."[17]  If a patent is listed in the Orange Book after an ANDA is submitted but before it is approved, the applicant for the pending ANDA generally must

---

[12] Section 505(j)(2)(A)(vii) of the FD&C Act; see also 21 CFR 314.94(a)(12)(i)(A).  The FD&C Act provides only one circumstance in which an applicant with a pending ANDA need not certify to a listed patent: "if with respect to the listed drug referred to in clause (i) information was filed under subsection (b) or (c) of this section for a method of use patent which does not claim a use for which the applicant is seeking approval under this subsection," the applicant can submit "a statement that the method of use patent does not claim such a use" (referred to as a "section viii statement") (section 505(j)(2)(A)(viii) of the FD&C Act; see also 21 CFR 314.94(a)(12)(iv)).
[13] Section 505(j)(2)(B) of the FD&C Act.
[14] Section 505(j)(2)(B)(ii)(I) of the FD&C Act.
[15] Section 505(j)(2)(B)(ii)(II) of the FD&C Act. See also 21 CFR 314.95(d)(1). Note, however, that under FDA's current regulations, if an applicant submits an amendment to its application that includes a paragraph IV certification before the receipt of an acknowledgement letter, the applicant must send the notice of its certification on or after the date it receives a paragraph IV acknowledgment letter from FDA, but not later than 20 days after the date of the postmark on the paragraph IV acknowledgment letter. 21 CFR 314.95(b) and (d)(2).
[16] Section 505(j)(5)(B)(iii) of the FD&C Act and 21 CFR 314.107(b)(3)(i).  If the RLD referenced by the ANDA has new chemical entity (NCE) exclusivity, the stay is extended to 7.5 years from date of the RLD's approval (7.5 year period). Section 505(j)(5)(F)(ii) of the FD&C Act.
[17] *Abbreviated New Drug Applications and 505(b)(2) Applications, Final Rule*, 81 Fed. Reg. 69580, 69582 (Oct. 6, 2016) (MMA Final Rule).

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD  20993
www.fda.gov

amend its application and provide an appropriate certification to the newly listed patent and the attendant notice; however, no 30-month stay based on this newly listed patent will be available in this circumstance.[18]

### 4.  180-Day Exclusivity and "First Applicant"

The Hatch-Waxman Amendments, enacted in 1984, set forth certain requirements for the applicant submitting the first application with a paragraph IV certification to certain patents to obtain and retain a period of 180 days without competition from other subsequent ANDAs with paragraph IV certifications to the same patents.  This period is known as "180-day exclusivity." FDA issued regulations interpreting these 180-day exclusivity provisions in 1994.[19]  These regulations provided that the "applicant submitting the first application" was the applicant that submitted an application that was both (1) substantially complete and (2) contained a paragraph IV certification, prior to the submission of any other application for the same listed drug that was both substantially complete and contained the same certification.[20]  The first generic applicant to file an ANDA containing a paragraph IV certification to a patent was eligible for 180 days of exclusivity, during which FDA could not approve a subsequent ANDA that challenged that patent for the same drug product.  Under the Hatch-Waxman Amendments as originally enacted and their implementing regulations, 180-day exclusivity was recognized on a patent-by-patent basis, meaning that there could be multiple occasions on which applicants could submit "the first application" containing a paragraph IV certification to a qualifying patent and the possibility of multiple 180-day periods of exclusivity for a single drug product.[21]

---

[18] Id.

[19] See Abbreviated New Drug Application Regulations, Proposed Rule, 54 Fed. Reg. 28872 (July 10, 1989) and Abbreviated New Drug Application Regulations; Patent and Exclusivity Provisions, Final Rule, 59 Fed. Reg. 50338 (Oct. 3, 1994).  In the 1989 proposed rule, FDA stated that:

> The date of submission of a prior application that contained a certification of invalidity or  noninfringement will be considered the date on which the applicant submitted a substantially complete   ANDA.
> [. . .]
> Although the provision could be read to permit the mere submission of the first certification of invalidity  or noninfringement to delay the effective date of subsequent ANDA's, regardless of the completeness of the  application, the legislative history of the 1984 Amendments makes clear that such an interpretation  would be inconsistent with the purposes of the patent certification and notification scheme. The purpose of section 505(j)(4)(B)(iv) of the act is to reward the first applicant to test the scope or validity of a patent  by litigating an action for patent infringement. However, it is only the giving of notice to the patent owner  under section 505(j)(2)(B)(ii) of the act, and not the filing of a certification of invalidity or noninfringement   with FDA, that can initiate a lawsuit.
> [. . .]
> FDA believes that to fulfill the purposes of the patent provisions of the statute, the date of submission of a previous application under section 505(j)(4)(B)(iv) of the act must therefore be the date on which the previous applicant submitted a substantially complete ANDA, and thus was in a position to notify the  patent owner.

54 Fed. Reg. 28872, at 28895.

In the 1994 final rule, FDA reiterated that:

> § 314.95(b) is consistent with the legislative history because it requires the ANDA applicant to provide notice once FDA has determined that the ANDA is substantially complete to permit a substantive review.

59 Fed. Reg. at 50350.

[20] 21 CFR 314.107(c)(2) (1995).

[21] See, e.g., Apotex Inc. v. FDA, 414 F. Supp. 2d 61, 74 (D.D.C. 2006).

The Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (Dec. 8, 2003) ("the MMA") revised the 180-day exclusivity provisions of the Hatch-Waxman Amendments.  The 180-day exclusivity provisions, as revised by the MMA, established, among other things, that 180-day exclusivity would no longer be determined on a patent-by-patent basis with the possibility of multiple first applicants who were each first with paragraph IV certifications to different patents, but, instead, must be determined on a product-by-product basis.  Under the MMA, 180-day exclusivity would be available only to a "First Applicant" who submitted its paragraph IV certification on the first day such a certification was submitted.[22]

Specifically, the MMA defined the term "First Applicant" as "an applicant that,":

> [1] *on the first day* on which a substantially complete application[23] containing a [paragraph IV certification] is submitted for approval of a drug [hereinafter the "when" prong],[24]
> [2] submits a substantially complete application that contains . . . [a paragraph IV certification for the drug] [hereinafter the "submit" prong] and
> [3] lawfully maintains a [paragraph IV certification] for the drug [hereinafter the "lawfully maintains" prong].[25]

---

[22] Section 505(j)(5)(D)(iii) of the FD&C Act; see also 149 Cong. Rec. S 15884 (daily ed., (Nov. 25, 2003)) (Senator Kennedy) ("The Hatch-Waxman provisions in this bill also make the exclusivity available only with respect to the patent or patents challenged on the first day generic applicants challenge brand drug patents, which makes the exclusivity a product-by-product exclusivity rather than a patent-by-patent exclusivity.")

[23] A "substantially complete application" is an application that "on its face is sufficiently complete to permit substantive review and contains all the information required by [FD&C Act § 505(j)(2)(A)]."  Section 505(j)(5)(B)(iv)(II)(cc) of the FD&C Act; see also 21 C.F.R. §§ 314.3, 314.101(b)(1), MMA Final Rule, 81 Fed. Reg. at 69593-94.

[24] An applicant that previously submitted a substantially complete ANDA that did not contain a paragraph IV certification may become eligible for 180-day exclusivity by amending its ANDA to include for the first time a paragraph IV certification to a listed patent for the RLD if that amendment occurs on the first day that an ANDA or amendment containing a paragraph IV certification is submitted.  See FDA's draft *Guidance for Industry 180-Day Exclusivity: Questions and Answers* 6, Q2 (Jan. 2017) (180-Day Draft Guidance).  Thus, "the first day" in this definition can pertain to the first day an applicant submits a substantially complete ANDA with a paragraph IV certification or the first day an applicant amends its substantially complete ANDA (which did not yet contain a paragraph IV certification) with a paragraph IV certification.  Because an application includes amendments and supplements to an application (see, e.g., 21 CFR 314.3 ("Abbreviated application, abbreviated new drug application, or ANDA is the application described under §314.94, including all amendments and supplements to the application.")) when an application meets the substantial completeness threshold, FDA generally does not separately evaluate whether an amendment to the application is "substantially complete."  In fact, FDA does not refuse to receive new strength amendments for lack of substantial completeness but, instead considers sufficiency of data provided in amendments to be a review issue.  See *Guidance for Industry:  ANDA Submissions – Refuse-to-Receive Standards*, Rev. 2 , at 1 & n.2 (Dec. 2016), available at
https://www.fda.gov/downloads/drugs/guidancecomplianceregulatoryinformation/guidances/ucm370352.pdf (noting that the guidance's discussion of receipt standards applies only to applications and new strength supplements).  Thus, in the case of amendments, the date of submission of a substantially complete application and the "first day"  of submission of a paragraph IV certification qualifying an applicant to be a  "First Applicant"  need not be the same day.  Instead, if an amendment containing a paragraph IV certification is submitted to a substantially complete application that has not previously contained a paragraph IV certification, the "first day" is determined on the day the paragraph IV certification is submitted via an amendment to the substantially complete application, regardless of whether the amendment itself meets the requirements for filing or approval.  Said another way, if, after submission of the amendment, the application as a whole is a substantially complete application that contains a paragraph IV certification (as determined by the receipt review of the original application), the initial requirements for eligibility for exclusivity are met.

[25] Section 505(j)(5)(B)(iv)(II)(bb) of the FD&C Act (emphasis added).  In a 2015 proposed rule implementing certain MMA provisions, FDA noted that "certain definitions, such as the definition of 'first applicant,' may be revised or supplemented in the future as we [FDA] continue to implement the 180-day exclusivity provisions of the MMA."

The MMA also set forth circumstances under which a First Applicant would forfeit its eligibility for 180-day exclusivity. Specifically, section 505(j)(5)(D) of the FD&C Act provides that a 180-day exclusivity forfeiture event means the occurrence of any of the events identified in section 505(j)(5)(D)(i) of the FD&C Act.[26] These forfeiture events are denominated in the statute as (I) Failure to Market, (II) Withdrawal of Application, (III) Amendment of Certification, (IV) Failure to Obtain Tentative Approval, (V) Agreement with Another Applicant, the Listed Drug Holder, or a Patent Owner, and (VI) Expiration of All Patents.

Relevant here, the withdrawal of application provision provides for forfeiture if:

> (II) WITHDRAWAL OF APPLICATION. — The first applicant withdraws the application or the Secretary considers the application to have been withdrawn as a result of a determination by the Secretary that the application does not meet the requirements for approval under paragraph (4).[27]

### B.  Factual Background

On May 14, 2013, one or more first applicants submitted a substantially complete ANDA (or an amendment to a substantially complete ANDA) for Buprenorphine and Naloxone Sublingual Film, 4 mg/1 mg and 12 mg/3 mg, with a paragraph IV certification.[28]  The May 14, 2013 First Applicant later withdrew its application for the 4 mg/1 mg and 12 mg/3 mg strengths.  The May 14, 2013 First Applicant also informed FDA that it had not given notice to the NDA holder or patent owner for these strengths, and FDA's review of the record confirms that the May 14, 2013 First Applicant did not submit any documentation to its ANDA of providing such notice.  At least one other applicant submitted a substantially complete ANDA (or an amendment to a substantially complete ANDA) for Buprenorphine and Naloxone Sublingual Film, 4 mg/1 mg and 12 mg/3 mg, after May 14, 2013 with a paragraph IV certification and provided notice to the NDA holder and patent holder.

### C.  Discussion

As further discussed below, the May 14, 2013 First Applicant qualified as a "First Applicant" for both the 4 mg/1 mg and 12 mg/3 mg strengths.  The May 14, 2013 First Applicant was the first generic drug applicant to submit a substantially complete application for Buprenorphine and Naloxone Sublingual Film, 4 mg/1 mg and 12 mg/3 mg, containing a paragraph IV certification. Absent forfeiture, this applicant would be eligible for 180-day exclusivity for these strengths. The withdrawal of the application and the lack of documentation of notice for the (now withdrawn) 4

---

Abbreviated New Drug Applications and 505(b)(2) Applications, Proposed Rule, 80 Fed. Reg. 6802, 6814 (Feb. 6, 2015) (MMA Proposed Rule).  In 2016, FDA codified its regulatory definition of "First Applicant," with minor editorial changes from the statutory definition as follows: "an ANDA applicant that, on the first day on which a substantially complete application containing a paragraph IV certification is submitted for approval of a drug, submits a substantially complete application that contains, and for which the applicant lawfully maintains, a paragraph IV certification for the drug."  *Abbreviated New Drug Applications and 505(b)(2) Applications, Final Rule*, 81 Fed. Reg. 69580, 69623 (Oct. 6, 2016) (MMA Final Rule); see also 21 C.F.R. § 314.3(b).

[26] Section 505(j)(5)(D)(i) of the FD&C Act.

[27] Section 505(j)(5)(D)(i)(II) of the FD&C Act.

[28] For purposes of simplicity, this letter will refer to the one or more first applicants that submitted a substantially complete ANDA (or an amendment to a substantially complete ANDA) for Buprenorphine and Naloxone Sublingual Film, 4 mg/1 mg and 12 mg/3 mg, on May 14, 2013 with a paragraph IV certification as the "May 14, 2013 First Applicant."

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD  20993
www.fda.gov

mg/1 mg and 12 mg/3 mg strengths gave rise to unique questions regarding 180-day exclusivity for these two strengths, which this letter addresses below.[29]

### 1.   Interpreting "First Applicant" Under the MMA

As described above, the MMA amended the FD&C Act to define "First Applicant" as "an applicant that, on the first day on which a substantially complete application containing a [paragraph IV certification] is submitted for approval of a drug, submits a substantially complete application that contains . . . [a paragraph IV certification for the drug] and lawfully maintains a [paragraph IV certification] for the drug.[30]  FDA's implementing regulations roughly parallel the statutory definition by defining "First Applicant" as "an ANDA applicant that, on the first day on which a substantially complete application containing a paragraph IV certification is submitted for approval of a drug, submits a substantially complete application that contains, and for which the applicant lawfully maintains, a paragraph IV certification for the drug."[31]

Under the facts of this case, eligibility for 180-day exclusivity for the 4 mg/1 mg and 12 mg/3 mg strengths turned on the interpretation of the term "First Applicant."

### i.   First Effective Approach

When considering the issue prior to enactment of MMA and prior to FDA's exclusivity determination in this case, FDA has taken an approach to determining eligibility for 180-day exclusivity (termed the "First Effective" approach for purposes of this letter) that when the first paragraph IV certification occurs in an amendment or supplement to an ANDA,  the first generic drug applicant that both (1) submits a substantially complete application (amendment or supplement) with a paragraph IV certification and (2) makes it "effective" for the drug by providing notice in a timely fashion, is eligible for 180-day exclusivity.

Under this approach, an applicant who submits an amendment or supplement to a substantially complete application with a paragraph IV certification, but who fails to give timely notice, could lose eligibility for 180-day exclusivity if another applicant submits an amendment or supplement to a substantially complete application with a paragraph IV certification later but gives notice first.  Under this approach, the day on which eligibility for 180-day exclusivity is determined would not be fixed; it could change if the first-to-file generic drug applicant submits an amendment or supplement to a substantially complete application with a paragraph IV certification but does not provide notice of that certification before another applicant completed both of those actions. This approach to 180-day exclusivity eligibility for amendments to ANDAs

---

[29] The issues discussed in this letter regarding 180-day exclusivity where an applicant withdrew its application prior to giving notice did not apply to the 2 mg/0.5 mg and 8 mg/2 mg strengths of Buprenorphine and Naloxone Sublingual Film.  Forfeiture of 180-day exclusivity for the 8 mg/2 mg strength is addressed in section II of this letter.
[30] Section 505(j)(5)(B)(iv)(II)(bb) of the FD&C Act.
[31] 21 CFR 314.3(b); see also Abbreviated New Drug Applications and 505(b)(2) Applications, Proposed Rule, 80 Fed. Reg. 6802, 6814 (Feb. 6, 2015) (MMA Proposed Rule). *Abbreviated New Drug Applications and 505(b)(2) Applications, Final Rule*, 81 Fed. Reg. 69580, 69623 (Oct. 6, 2016) (MMA Final Rule).  We note that if an applicant submits a certification earlier than the first working day after a patent is published in the Orange Book, such certification will not be considered valid and will not qualify the applicant to be a first applicant for exclusivity purposes.  21 CFR 314.94(a)(12)(viii)(C)(*1*)(*ii*).

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD  20993
www.fda.gov

that FDA applied prior to the enactment of the MMA [32] was upheld in *Purepac Pharmaceutical Co. v. Thompson*, 354 F. 3d 877 (D.C. Cir. 2004). [33]

Although *Purepac* was decided after the MMA was enacted, the MMA did not apply to the amendments and patent certifications at issue in the case and the Court did not opine on whether the outcome would have been the same post-MMA.[34]  Nevertheless, some subsequent FDA statements and decisions have suggested that FDA would continue to apply this "First Effective" approach to decisions made under the post-MMA statute and regulation with respect to amendments and supplements that contain a paragraph IV certification.  For example, FDA's 180-Day Draft Guidance describes that for amendments and supplements to approved applications, "FDA considers the paragraph IV certification not to be effective until notice is provided," meaning that:

> a delay in giving notice of certain amendments or supplements could mean a later date for the paragraph IV certification to become effective which could result in failure to obtain first applicant status (if another applicant submits a certification that becomes effective in the interim).[35]

Neither the draft guidance nor other FDA statements appears to have addressed how the requirement to give timely notice would be relevant to determining "First Applicant" status post-MMA (now that "First Applicant" is a defined term in the statute) for applications in which the paragraph IV certification is included in the original ANDA submission, rather than an amendment or supplement.[36]  Further, although FDA has indicated in draft guidance that the

---

[32] The FD&C Act, prior to its amendment by the MMA, did not include a definition of "First Applicant" and the statute addressed the timing of notice for a paragraph IV certification submitted in an amendment, but it did not address timing of notice for a paragraph IV certification submitted in an original application.

[33] In upholding FDA's determination that "if an applicant fails to provide notice at the same time that it files its amended ANDA, the certification becomes effective only when the applicant ultimately provides notice, rather than when the applicant files its amended ANDA," the *Purepac* court noted that the relevant statute and regulations were silent as to the consequence of not sending notice simultaneously with an amendment or supplement,  *Purepac*, 354 F.3d at 888-889.

[34] Pub. L. 108-73 § 1102(b)(1), 117 Stat. 2460.

[35] 180-Day Draft Guidance at 8-9; MMA Proposed Rule, 80 Fed. Reg. 6802, 6813. ("Notice of paragraph IV certification in accordance with applicable regulations also is necessary for an ANDA applicant to be eligible for 180-day exclusivity based upon a paragraph IV certification ...."); MMA Final Rule, 81 Fed. Reg. at 69608-10, 69617 (discussing the timing of notice generally and in relation to 180-day exclusivity, explaining that FDA "proposed that an applicant that prematurely sends notice of a paragraph IV certification would be required to resend notice within the required timeframe after the 505(b)(2) or ANDA has been filed or received, respectively, to satisfy the notice requirement of the FD&C Act and, in the case of a first applicant, to qualify for 180-day exclusivity", that "this proposal is intended to discourage ANDA applicants from submitting a paragraph IV certification and sending notice to the NDA holder and each patent owner every day during the 30-day period after issuance of a patent that could be listed for the RLD in an effort to qualify as a first applicant eligible for 180-day exclusivity…", and that "The relevant date for determining eligibility for 180-day exclusivity based upon submission of a paragraph IV certification contained in an amendment is the date of submission of the amendment. We are revising § 314.95(d)(2) to clarify that if an ANDA applicant's notice of paragraph IV certification is timely provided in accordance with § 314.95(b)(2) and the applicant has not submitted a previously paragraph IV certification, FDA will base its determination of whether the applicant is a first applicant on the date of submission of the amendment containing the paragraph IV certification."); but see MMA Final Rule, 81 Fed. Reg. at 69622-23 (explaining that FDA "proposed to establish an administrative consequence for an ANDA applicant that fails to provide timely notice of a paragraph IV certification…[by] deem[ing] the date that the ANDA was submitted to be delayed by the number of days by which the timeframe for sending notice of a paragraph IV certification was exceeded… [which] created the potential for an ANDA applicant to lose its first-applicant status…" and that FDA "was declining to finalize the proposed administrative consequence…").

[36] 21 CFR § 314.95(d) is not inconsistent with this interpretation. See 21 CFR §314.95(d); see also 81 Fed. Reg. at 69622-23 (declining to finalize the administrative consequence of considering the date of a paragraph IV certification

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD  20993
www.fda.gov

failure to send timely notice could affect eligibility for 180-day exclusivity for supplements and amendments, this draft guidance has not been finalized and relevant FDA statements have not specifically analyzed or set forth how the notice requirement was relevant to determining "First Applicant" status under the statutory definition of "First Applicant" added by the MMA.[37]

Presented with questions regarding the meaning of "First Applicant" in this case in the post-MMA context, and upon further review of the relevant statutory and regulatory provisions, FDA has concluded that the "First Effective" approach, which likely grew out of the application of the principles of the pre-MMA statutory framework in the *Purepac* case, is not consistent with the statutory definition of "First Applicant" as defined by Congress in the MMA.  This is so because application of the "First Effective" approach post-MMA effectively writes out of the statutory definition of "First Applicant" the reference to the "first day" in the "when" prong of that definition in cases where notice is not timely given.  Thus, as further explained below, in interpreting the MMA statutory language and applying the post-MMA statutory scheme, FDA rejects the "First Effective" approach to determining which applicants are "First Applicants" and is adopting the interpretation explained below to determine "First Applicant" status and eligibility for exclusivity for ANDAs referencing Suboxone 4 mg/1 mg and 12 mg/3 mg strengths.[38]  This interpretation is most consistent with the text and structure of the MMA.

### ii.  "First Submitted" Interpretation

FDA believes that the interpretation described below (termed the "First Submitted" interpretation for purposes of this letter) is most consistent with the text and structure of the MMA and the requirements for a "First Applicant" to obtain and retain eligibility for 180-day exclusivity.

As noted above, under the statute, a "First Applicant" is "an applicant that, on the first day on which a substantially complete application containing a [paragraph IV certification] is submitted for approval of a drug, submits a substantially complete application that contains . . . [a paragraph IV certification for the drug] and lawfully maintains a [paragraph IV certification] for the drug."[39] Under the "First Submitted" interpretation, the definition of "First Applicant" is read such that the "when" prong (i.e., "on the first day on which a substantially complete application . . .") refers to a single specific date on which an application was submitted to qualify its sponsor as a "First Applicant"; whereas the "submit" and "lawfully maintain" prongs describe requirements for specific applications submitted on this single fixed date to maintain eligibility for exclusivity.  Under this reading of the statute, there can only ever be one "first day on which a substantially complete application containing a paragraph IV certification [or an amendment to a substantially complete application with a paragraph IV certification] is submitted," regardless of whether the applicant that submits its application (or an amendment or supplement to its application) on that "first day" gives or fails to give timely notice of and/or otherwise lawfully maintains its paragraph IV certification. Thus, while an applicant must meet all three prongs to obtain 180-day exclusivity, the "when" prong refers to a specific, static date determined by the specific first day on which any applicant submits a substantially complete application (or an

---

to be different from the date the paragraph IV certification was submitted when untimely notice is provided as proposed in the proposed rule).

[37] FDA did note in the MMA preamble, however, that "certain definitions, such as the definition of "first applicant," may be revised or supplemented in the future as [OGD] continue[s] to implement the 180-day exclusivity provisions of the MMA."  MMA Proposed Rule, 80 Fed. Reg. at 6814.

[38] We note that in applying the pre-MMA statutory scheme for any ANDAs governed by the pre-MMA 180-day exclusivity provisions, the "First Effective" approach remains appropriate because the post-MMA statutory definition of "First Applicant" does not apply to those applications.

[39] Section 505(j)(5)(B)(iv)(II)(bb) of the FD&C Act.

amendment or supplement to a substantially complete application) containing a paragraph IV certification to a patent listed for that product. This specific date is fixed and does not change because of subsequent events.

FDA believes that this approach is most consistent with the plain meaning of the "First Applicant" definition because it gives full effect to the "when" prong, including the use of the indefinite article "a" that modifies "substantially complete application," which suggests that the "when" prong date is set permanently once a substantially complete application (or an amendment or supplement to a substantially complete application) containing a paragraph IV certification is first submitted.  Any application, whether an original application, amendment, or supplement, submitted after this "first day" cannot satisfy the "when" prong and cannot be a "First Applicant," as there can be only one "first day on which a substantially complete application containing a paragraph IV certification is submitted."

By contrast, to reconcile the "First Effective" approach with the MMA's definition of "First Applicant," FDA would need to accept that an applicant that did not in fact submit a substantially complete application (or an amendment or supplement to a substantially complete application) with a paragraph IV certification on "the first day" nevertheless is a "First Applicant."  To reach this result, FDA presumably would need to take the position that, in spite of the statutory language: (1) an applicant that fails to give timely notice (or untimely notice before another applicant gives notice) loses its "First Applicant status" because it failed to lawfully maintain a paragraph IV certification, (2) the failure to satisfy the "lawfully maintain" prong changes the date referenced in the "when" prong, and (3) therefore a later-submitting applicant (whether via an original submission or an amendment) can become a "First Applicant" despite the fact that it did not submit an application (or an amendment) on the first day on which a substantially complete application (or an amendment to a substantially complete application) with a paragraph IV certification was submitted.  This approach cannot be easily reconciled with the post-MMA statutory language because, as described above, the plain meaning reading of the phrase "[o]n the first day on which a substantially complete application containing a [paragraph IV certification] is submitted for approval of a drug" is that it refers to a single, static "first" day.[40] The requirement that an applicant "lawfully maintain" its paragraph IV certification only appears in the second half of the "First Applicant" definition. Congress did not include the requirement that a paragraph IV certification be "lawfully maintained" in the "when" prong itself, so FDA interprets the requirement to "lawfully maintain" a paragraph IV certification to apply only to "First Applicants" who qualified for "First Applicant" status by submitting their paragraph IV certifications on the first day that a paragraph IV certification was submitted for that drug.

We also note that the "First Submitted" interpretation is the most consistent with the structure of the MMA and the requirements for a "First Applicant" to obtain and retain 180-day exclusivity as described at sections 505(j)(5)(B)(iv) and 505(j)(5)(D) of the FD&C Act.  Specifically, the "First Effective" approach arguably would allow exclusivity to roll to another First Applicant when the first-in-time applicant with a paragraph IV certification does not give timely notice and/or otherwise fails to lawfully maintain its paragraph IV certification.[41]  In certain cases, finding

---

[40] As noted above, the "First Submitted" interpretation arguably is not consistent with FDA's description in the 180-Day Draft Guidance that a later-submitting applicant could jump the position of an applicant who earlier submitted a paragraph IV certification in an amendment to a substantially complete application or a supplement if the first-submitting applicant fails to give notice before the later-submitting applicant.  FDA intends to update the draft guidance accordingly.

[41] Under the "First Effective" approach, where the "lawfully maintain" prong would have to be read to modify the "when" prong of the "First Applicant" definition, a potential first applicant could submit a substantially complete ANDA

another applicant eligible for "First Applicant" status under these circumstances conflicts with the statute's rule regarding forfeited exclusivity (in which exclusivity, once forfeited, does not roll to the next subsequent applicant but instead removes the barrier for approval for all subsequent applicants).

Specifically, the MMA added provisions addressing the forfeiture of eligibility for exclusivity by a "First Applicant."  Under two such provisions, the "amendment of certification" and "withdrawal of application" forfeiture provisions, an applicant forfeits eligibility if it amends or withdraws its paragraph IV certification or withdraws its application, and 180-day exclusivity is extinguished.[42] In addition, Congress added in section 505(j)(5)(D)(iii) a rule on the consequences of forfeiture of eligibility for 180-day exclusivity.  Specifically, if all first applicants forfeit exclusivity, no applicant is eligible for 180-day exclusivity.

A theory in which the "lawfully maintain" prong modifies the "when" prong is in tension with these provisions because the same action – the applicant that submitted a substantially complete ANDA containing a paragraph IV certification on the first day amends its certification or withdraws its ANDA – could have a different effect under different provisions of the statute. Under this theory, the applicant who withdraws its certifications or its application is no longer considered a "First Applicant" and, because the "lawfully maintain" prong modifies the "when prong," *another applicant who previously was not a first applicant now may qualify as one despite submitting on a different "first day."*  By contrast, under the forfeiture provisions, the applicant who withdraws its certification or its application forfeits eligibility for exclusivity but another applicant does not become eligible as a result.  This outcome that exclusivity rolls to another applicant who did not submit on the first day if a "First Applicant" amends its certifications or withdraws its ANDA, thus seems to conflict with Congress's intent and the statutory provision that states that no applicant shall be eligible for a 180-day exclusivity period if all first applicants forfeit the 180-day exclusivity period.

Interpreting section 505(j)(5)(B)(iv)(II)(bb) under the "First Submitted" interpretation avoids this conflict with section 505(j)(5)(D)(iii) of the FD&C Act, as the amendment or withdrawal of certifications under that interpretation does not result in 180-day exclusivity eligibility rolling to another applicant but instead would result in forfeiture and the ability to immediately approve any subsequent applicants otherwise ready for approval.

Finally, FDA has concluded that the "First Submitted" interpretation provides additional certainty, which is preferable from a policy perspective.  Here, because the "when" prong of "First Submitted" is outcome determinative and not applicant-specific, and because once fixed, the date is immutable and does not move based on later actions or inaction, both the FDA and applicants affected by 180-day exclusivity have greater certainty and predictability into the 180-day exclusivity landscape and potential timing of approval.  In short, the "First Submitted" interpretation provides a clear and administrable approach for determining "First Applicant" status.

      **2.  First Applicant for ANDAs Referencing Suboxone (Buprenorphine and Naloxone) Sublingual Film, 4 mg/1 mg and 12 mg/ 3mg, NDA 22410, as the RLD and Forfeiture under Section 505(j)(5)(D)(i)(II) of the FD&C Act**

---

containing a paragraph IV certification, withdraw that ANDA (or certification), and a second-in-time applicant could qualify as the First Applicant for that reference listed drug (even though it submitted on a different "first day").
[42] FD&C Act § 505(j)(5)(D)(i)(II)-(III).

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD  20993
www.fda.gov

Under the "First Submitted" interpretation described above, the May 14, 2013 First Applicant qualified as the "First Applicant" for both the 4 mg/1 mg and 12 mg/3 mg strengths.  The first day on which a substantially complete ANDA application (or an amendment or supplement to a substantially complete application) containing a paragraph IV certification was submitted for Buprenorphine and Naloxone Sublingual Film, 4 mg/1 mg and 12 mg/3 mg, was May 14, 2013, the day on which the May 14, 2013 First Applicant submitted its application or amendment. Thus, the "first day" under the definition of "First Applicant" is **May 14, 2013** as there was no applicant that submitted a substantially complete ANDA with a paragraph IV certification (or amended its substantially complete application with a paragraph IV certification) prior to that date.  Because the May 14, 2013 First Applicant withdrew its application for the 4 mg/1 mg and 12 mg/3 mg strengths, it forfeited 180-day exclusivity under section 505(j)(5)(D)(i)(II).  Its forfeiture means there were no barriers to approval of subsequent applicants for those strengths.

### 3.  Corrections to the Paragraph IV Patent Certifications Website

Prior to FDA's exclusivity determination on June 14, 2018, FDA's "Paragraph IV Patent Certifications" website listed the "First Applicant" date for the 4 mg/1 mg as May 14, 2013; however, for the 12 mg/3 mg strength, the website erroneously listed March 26, 2014 as the "First Applicant" date.  For the reasons described above, this date was incorrect; the website has been updated to reflect May 14, 2013 as the appropriate "First Applicant" date (i.e., the "first day") a substantially complete application (or an amendment to a substantially complete application) with a paragraph IV certification was submitted for the 12 mg/3 mg strength.[43]

## II.  Forfeiture under the Failure to Market Provision for Buprenorphine and Naloxone Sublingual Film, 8 mg/2 mg

### A.  Statutory Background

The MMA describes, among other things, certain events that can result in the forfeiture of a first applicant's 180-day generic drug exclusivity as described in section 505(j)(5)(B)(iv) of the FD&C Act.

A forfeiture event with respect to an application subject to the 180-day exclusivity provisions means the occurrence of any of the events identified in section 505(j)(5)(D)(i) of the FD&C Act. These forfeiture events are defined in the statute as (I) failure to market, (II) withdrawal of application, (III) amendment of certification, (IV) failure to obtain tentative approval, (V) agreement with another applicant, the listed drug holder, or a patent owner, and (VI) expiration of all patents.  The "failure to market" forfeiture event was at issue in this matter.

The failure to market forfeiture provision provides as follows:

(I)  FAILURE TO MARKET. – The first applicant fails to market the drug by the later of –

---

[43] We note that the March 26, 2014 date would be incorrect even if FDA had applied the "First Effective" Approach to this case.  This is because after May 14, 2013 but before March 26, 2014 one or more applicants submitted a substantially complete ANDA (or an amendment to a substantially complete ANDA) for Buprenorphine and Naloxone Sublingual Film, 12 mg/3 mg, with a paragraph IV certification, and that applicant provided timely notice to the NDA holder and patent owner.

(aa) the earlier of the date that is –

(AA) 75 days after the date on which the approval of the application of the first applicant is made effective under subparagraph (B)(iii); or

(BB) 30 months after the date of submission of the application of the first applicant; or

(bb) with respect to the first applicant or any other applicant (which other applicant has received tentative approval), the date that is 75 days after the date as of which, as to each of the patents with respect to which the first applicant submitted and lawfully maintained a certification qualifying the first applicant for the 180-day exclusivity period under subparagraph (B)(iv), at least 1 of the following has occurred:

(AA) In an infringement action brought against that applicant with respect to the patent or in a declaratory judgment action brought by that applicant with respect to the patent, a court enters a final decision from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken that the patent is invalid or not infringed.

(BB) In an infringement action or a declaratory judgment action described in subitem (AA), a court signs a settlement order or consent decree that enters a final judgment that includes a finding that the patent is invalid or not infringed.

(CC) The patent information submitted under subsection (b) or (c) is withdrawn by the holder of the application approved under subsection (b). Section 505(j)(5)(D)(i)(I).

Application of the failure to market forfeiture provision requires a series of analyses based on the timing of specific events.  The statute directs that a forfeiture event occurs when the first applicant fails to market the drug by the later of two dates.  One of these dates is calculated under item (aa) by determining the earlier of a date that is either 75 days after the first applicant's ANDA is approved (subitem (AA)) or 30 months after the date of submission[44] of the first applicant's ANDA (subitem (BB)).

---

[44] Section 505(j)(5)(D)(i)(I)(aa)(BB) of the FD&C Act states that the 30-month period should be calculated from the date of "submission of the application of the first applicant."  In applying the MMA 180-day exclusivity provisions, FDA considers the date an ANDA containing a paragraph IV certification is submitted to be the date the agency considers the ANDA to have been "received" pursuant to 21 CFR 314.101(b).  Both this regulation and the definition of "first applicant" at section 505(j)(5)(B)(iv)(II)(bb) of the FD&C Act require that the ANDA containing the paragraph IV certification be substantially complete, meaning it is sufficiently complete to permit a substantive review.  When an ANDA containing a paragraph IV certification is determined, upon review, to have been substantially complete as of the day it was submitted to FDA, it will be considered to be received as of the date it was submitted (i.e., date-stamped by the appropriate FDA mail-room).  When OGD sends the applicant a refuse to receive letter describing the additional information that must be submitted to render an ANDA substantially complete, the ANDA is deemed received on the day the information necessary to find the application substantially complete was submitted.  As described above, FDA does not make refuse-to-receive decisions for amendments to applications.  *See supra* notes 23 & 24.

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD  20993
www.fda.gov

The other of these dates is calculated under item (bb) by identifying the date that is 75 days after the date as of which at least one of the enumerated events occurred, with respect to each of the patents as to which the first applicant submitted and lawfully maintained a certification that qualified it as a first applicant.  These (bb) subitem events include, very generally, when a court enters a final decision that the patent is invalid or not infringed, a court signs a settlement order or consent decree entering final judgment that includes a finding that the patent is invalid or not infringed, or the patent information for the listed drug is withdrawn by the NDA holder.

To meet the requirements of item (bb), an event enumerated in the subitems of item (bb) must occur "with respect to the first applicant or any other applicant (which other applicant has received tentative approval)."  FDA interprets this clause of item (bb) as identifying the spectrum of potential applicants with respect to which one of the events described in the subitems must occur in order to be relevant to the question of forfeiture.  The parenthetical clarifies that, in order for this provision to apply, FDA must determine at the time forfeiture is analyzed, that an applicant other than the first applicant described earlier in the sentence has had a subitem (bb) forfeiture event and has received tentative approval.  If at the time of the forfeiture determination no other applicant who has had an item (bb) trigger has received a tentative approval, but there is the possibility of tentative approval in the future, this would be insufficient to support a finding that the requirements for forfeiture under this provision are satisfied.

The second clause of item (bb) describes the time period used to calculate the item (bb) forfeiture date.  In FDA's view, an "other applicant" need not be tentatively approved at the time the subitem event occurs, or within the 75-day period after the subitem event, in order for this provision to apply.  FDA considers an enumerated event in the subitems to begin the 75-day period described in item (bb).  Forfeiture occurs if this 75-day period is triggered and runs and before or after the occurrence of the enumerated triggering event and 75-day period, the relevant "other applicant" has received tentative approval.[45]  This interpretation is consistent with the structure of item (bb), which separates the clauses describing the spectrum of applicants to which it applies and the rule for determining timing.  As described below, FDA's interpretation also is consistent with the purpose of the failure to market provision.

In sum, FDA will consider the item (bb) date to occur if, at any time, all of the following requirements are met: (1) there is a first applicant or an "other applicant (which other applicant has received tentative approval)"; (2) an event described in the (bb) subitems occurs with respect to that first applicant or that "other applicant"; and (3) at least 75 days have passed after the subitem event occurred. The relevant date under item (bb) for conducting the calculation in

---

[45] The holding of the Court of Appeals for the Federal Circuit in *Apotex, Inc. v. Daiichi Sankyo Co., Ltd.,* 781 F.3d 1356 (Fed. Cir. 2015), that a subsequent applicant's action for a judgment declaring invalid or not infringed a disclaimed patent (the subject of a paragraph IV certification), presented a justiciable case or controversy is not inconsistent with the Agency's interpretation.  The "case-or-controversy" issue in that case turned, in part, on whether the subsequent applicant's declaratory judgment action, if successful, could potentially cause the first applicant to forfeit under section 505(j)(5)(D)(i)(I) by triggering a (bb) subitem event.  The court reasoned, in part, that the declaratory judgment action potentially could trigger forfeiture, despite the fact that the subsequent applicant had not yet received tentative approval because section 505(j)(5)(D)(i)(I) of the FD&C Act did not require the subsequent applicant's application to have received tentative approval *before initiating* the action that ultimately would result in a subitem (bb) event.  *Id.* at 1367-71.  Although the court also suggested that the 75-day period in (bb) began once the subitem (bb) event occurred *and* the other applicant had tentative approval, *see id.* at 1370, those statements were dicta, and we do not find them persuasive.  The issue of when the 75-day clock began did not affect the court's holding that there was a justiciable case or controversy, which instead turned on the necessity of having tentative approval prior to initiating an action that could lead to a (bb) subitem event.

section 505(j)(5)(D)(i)(I) is 75 days after the subitem event.[46]  As explained above, tentative approval could occur at any time prior to or after the subitem (bb) event occurs as long as the requirement for TA of another applicant has been satisfied at the time FDA makes the forfeiture determination.

FDA believes that this interpretation—that forfeiture requirements under item (bb) are met regardless of whether tentative approval of the application of an "other applicant" occurs before or after a subitem (bb) event—effectuates Congress's purpose in enacting the failure to market provision.[47]  The 180-day exclusivity provisions reward generic drug applicants who are first to expose themselves to the risk of patent litigation, but provide that this reward can be forfeited in cases where those applicants' failure to begin commercial marketing has the potential to hold up other applicants otherwise eligible for approval.  Requiring an "other applicant's" application to have received tentative approval in order for a (bb) subitem event that occurred with respect to that applicant to trigger forfeiture effectuates this intent, because in general exclusivity will only be forfeited if there is the possibility that forfeiture can result in increased competition (because another applicant is ready to be fully approved but for the exclusivity).  However, given that tentative approval can occur at any point before, during, or after patent litigation, we see no discernable policy reason why Congress would intend to require that tentative approval must have occurred before one of the subitem (bb) events or during the 75 days thereafter in order to trigger forfeiture.  Rather, such an interpretation could lead to arbitrary and unpredictable results.

### B.  Factual Background

One or more first applicants submitted a substantially complete ANDA (or an amendment to a substantially complete ANDA) for a generic Buprenorphine and Naloxone Sublingual Film, 8 mg/2 mg containing a paragraph IV certification on October 15, 2012.[48]  The October 15, 2012 First Applicant qualified as a "First Applicant" and therefore was eligible for 180-day exclusivity for its generic Buprenorphine and Naloxone Sublingual Film, 8 mg/2 mg absent forfeiture.

A subsequent applicant submitted an ANDA after October 15, 2012 and provided notice to the NDA holder and patent owner.  This subsequent applicant was sued for patent infringement, and the suit included the patent or patents qualifying[49] the October 15, 2012 First Applicant for 180-day exclusivity.  More than 75 days prior to FDA's exclusivity determination on June 14, 2018, a federal district court entered a consent decree and final judgment in favor of the subsequent applicant on the Qualifying Patent.  The consent decree and final judgment included

---

[46] For example, suppose that a subsequent applicant were to receive a judgment described in subitem (BB) on April 1 and to receive tentative approval on August 1.  The 75-day period would begin once the (BB) event occurred on April 1, and it would end on June 15.  On August 1, all of the requirements of (bb) would be met: (1) there would be an "other applicant" that received tentative approval; (2) an event described in the (bb) subitems would have occurred with respect to that other applicant; and (3) 75 days would have passed since the event occurred.  Forfeiture would have occurred because all three requirements are met.  The relevant date under (bb) for conducting the calculation in 505(j)(5)(D)(i)(I) would be June 15.

[47] *Cf. Apotex*, 781 F.3d at 1370 (rejecting first applicant's argument that, with respect to an "other applicant", a (bb) subitem event could trigger forfeiture only if the other applicant's application had received tentative approval before the action was initiated, in part, because that interpretation did not appear to effectuate Congress's purpose).

[48] For purposes of simplicity, this letter will refer to the one or more first applicants that submitted a substantially complete ANDA (or an amendment to a substantially complete ANDA) containing a paragraph IV certification on October 15, 2012 as the "October 15, 2012 First Applicant."

[49] For purposes of simplicity, this letter will refer to the patent or patents qualifying the October 15, 2012 First Applicant for 180-day exclusivity as the "Qualifying Patent."

a finding that the Qualifying Patent was not infringed.  The subsequent applicant was tentatively approved on June 14, 2018.

### C.  Forfeiture under the Failure to Market Forfeiture Provision

The October 15, 2012 First Applicant would forfeit its eligibility for 180-day exclusivity under the failure to market provision if it did not market its Buprenorphine and Naloxone Sublingual Film, 8 mg/2 mg, by the later of two dates:  the "item (aa) date"[50] and the "item (bb)"[51] date."

The "item (aa) date" is the earlier of two dates:

1.  The first date is "75 days after the date on which the approval of the application of the first applicant is made effective under subparagraph (B)(iii)."[52]  This event did not occur prior to FDA's exclusivity determination on June 14, 2018.

2.  The second date is "30 months after the date of submission of the application of the first applicant."[53]  The October 15, 2012 Applicant submitted its application more than 30 months prior to the exclusivity determination on June 14, 2018.

The earlier of these two dates is the second subitem date, as any date that would occur under the first subitem would now be later than the second subitem date; therefore, the "item (aa) date" is the second subitem date.

The "item (bb) date" is 75 days after at least one of three events has occurred with respect to the first applicant or "any other applicant (which other applicant has received tentative approval)"[54] as to each patent with respect to which the first applicant submitted and maintained a paragraph IV certification qualifying the first applicant for the 180-day exclusivity period:

1.  The first event occurs when, "[i]n an infringement action brought against that applicant with respect to the patent or in a declaratory judgment action brought by that applicant with respect to the patent, a court enters a final decision from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken that the patent is invalid or not infringed."[55]

2.  The second event occurs when, "[i]n an infringement action or a declaratory judgment action described in subitem (AA), a court signs a settlement order or consent decree that enters a final judgment that includes a finding that the patent is invalid or not infringed."[56]

3.  The third event occurs when, "[t]he patent information submitted under subsection (b) or (c) is withdrawn by the holder of the application approved under subsection (b)."[57]

---

[50] Section 505(j)(5)(D)(i)(I)(aa) of the FD&C Act.
[51] Section 505(j)(5)(D)(i)(I)(bb) of the FD&C Act.
[52] Section 505(j)(5)(D)(i)(I)(aa)(AA) of the FD&C Act.
[53] Section 505(j)(5)(D)(i)(I)(aa)(BB) of the FD&C Act.
[54] Section 505(j)(5)(D)(i)(I)(bb) of the FD&C Act.
[55] Section 505(j)(5)(D)(i)(I)(bb)(AA) of the FD&C Act.
[56] Section 505(j)(5)(D)(i)(I)(bb)(BB) of the FD&C Act.
[57] Section 505(j)(5)(D)(i)(I)(bb)(CC) of the FD&C Act.

U.S. Food & Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD  20993
www.fda.gov

The second event occurred, and it transpired more than 75 days before FDA's exclusivity determination on June 14, 2018. The "item (bb) date" therefore is 75 days after the date on which the second event occurred.

The October 15, 2012 First Applicant did not market its product by the later of the item (aa) date and the item (bb) date.  Accordingly, it forfeited its eligibility for 180-day exclusivity for Buprenorphine and Naloxone Sublingual Film, 8 mg/2 mg, under the failure to market forfeiture provision.

Sincerely,

Christopher
H. Pruitt -S

Digitally signed by Christopher H. Pruitt -S
DN: c=US, o=U.S. Government, ou=HHS,
ou=FDA, ou=People,
0.9.2342.19200300.100.1.1=2001394858,
cn=Christopher H. Pruitt -S
Date: 2018.07.13 16:28:11 -04'00'

Christopher Pruitt
Director, Division of Legal and Regulatory Support
Office of Generic Drug Policy
Office of Generic Drugs
Center for Drug Evaluation and Research